MANUEL CIVIDANES-ALONSO, Plaintiff and Appellee, *v.* MAR-CELA OBEN and JESÚS VÁZQUEZ, Defendants and Appellants.—LUCE & Co., LTD., Intervenors and Appellants.

No. 3450. Argued April 14, 1925.—Decided December 23, 1925.

1. INJUNCTION—POSSESSION— INTERVENTION — PLEADING. — When questions are raised for the first time in the brief below after trial instead of on demurrer before trial the trial judge may hold that the defects referred to had been cured by the evidence.

2. ID.—ID.—ID.—ID.—When in an injunction proceeding to recover possession the intervenors assume responsibility for the acts admitted by them to have been performed pursuant to their instructions by the defendants, and the complaint in intervention seems to set forth in substance and in fact a defense to the plaintiff's cause of action, the complaint in intervention is in effect an answer to the plaintiff's complaint.

3. ID.—ID.—ID.—ID.—The spirit and the purpose of our statute is to discourage

conduct calculated to provoke a breach of the peace, to give parties in possession a day in court by compelling parties out of possession to resort to the courts in order to assert their rights.

4. ID.—ID.—ID.—ID.—A previous and co-existent constructive possession or mere legal or equitable right to possession is no defense to a proceeding for the restoration of the actual possession when lost as the result of violent or clandestine methods employed by a defendant.

5. ID.—APPEAL—ASSIGNMENT OF ERROR.—Whatever may be the merit of the contentions involved in assignment of errors that are only enunciated but not discussed in the brief, they do not demand serious consideration.

District Court of Guayama, G. Castejón, J. Judgment for the plaintiff in injunction proceedings to recover possession. *Affirmed.*

J. *Tous Soto* and *R. Pérez Marchand* for the appellants.' *L. Muñoz Morales* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Defendants and intervenors appeal from an adverse judgment rendered for reasons stated thus:

"The petitioner in this case, Manuel Cividanes, as administrator of the estate of Rufina Molinari, has brought this special injunction proceeding to recover the possession of certain property, in which he has been disturbed by the acts of defendants Marcelino Oben and Jesús Vázquez, field manager and overseer, respectively, of Central Machete.

"Said defendants alleged that they acted by order of their principal, Luce & Company, Ltd., and this firm also brought an action of intervention opposing the claims of the petitioner.

"Substantially, the petition is based on the following facts:

"That petitioner is administrator of the property belonging to the estate of Rufina Molinari, among which is found, under his charge and custody, a sugar factory built on a tract of land in the ward of Jobos, within the district of Guayama.

"That since the year 1916, in which he took possession of said administration, he has been in the uninterrupted possession of said factory of the Merced plantation, composed of machinery, buildings and all other accessories within the bounds of said factory.

"That on the last days of the month of September, 1923, defendants Oben and Vázquez ordered and constructed, respectively, within the limits of the above mentioned factory, six frame dwelling-houses, roofed with zinc, to be occupied by laborers, and defendants are planning to continue making new constructions in the same place.

"That, proceeding in this manner, defendants have deprived

plaintiff of the possession and tenancy of the factory, and that petitioner, as administrator, has requested defendants to cease such disturbance, and the latter have refused to do so.

"The complaint of intervention, in the name of Luce & Co., Ltd., alleges in essence the following facts:

"That Luce & Co., Ltd., are owners of the Merced plantation and are in the material and civil possession of it at present and have been since they acquired it from A. Hartmann & Co. on the 25th of June, 1920.

"That on said plantation are several buildings, warehouses and accessories, located on a lot of approximately eight *cuerdas,* said buildings belonging to Rufina Molinari, but the land on which they are built, as part of the Merced plantation, belongs to the firm of Luce & Company, and the latter is in the actual possession of all the land that surrounds said buildings, warehouses and accessories.

"That the corporation Central Machete is neither the owner nor the actual possessor of the Merced plantation, the construction of said houses having been ordered by the intervenor through its employees Oben and Vázquez.

"That the heirs of Molinari have at no time been in the possession of the Merced plantation, or of part of it, not even within the year previous to the bringing of this action, and they have been in the possession of the above mentioned buildings only, and not of the surrounding or adjacent land, which has been in the possession of the intervenor ever since it was acquired.

"The parties to this suit have introduced written evidence with respect to the title, which we admit and consider now to the only effect of ascertaining the fact of the possession, as in these cases it is contrary to law to consider questions of title and property, although the latter can serve to make the former clearer. Ortiz v. Silva et at., 28 P.R.R. 357. Alfaro v. Alonso, 27 P.R.R. 50.

"There is also oral evidence, which we will consider opportunely.

"The intervenor has raised in its brief the following legal questions:

"That the petition is insufficient, because it does not describe the portion of land whose possession is claimed, and, further, that the complaint in intervention has not been answered.

"As regards the first question, we shall say that, although the complaint refers to a piece of land, it has been sufficiently identified by the evidence, which corrected any mistake that might have been made. Serrano v. Sucesión Santos, 24 P.R.R. 163.

"With respect to the absence of an answer, it seems to us that, considering the way in which the questions have been raised in this case, the complaint of intervention constitutes a true substitution of defendants, for defendants answered that they acted in the name of the intervenor, who only objects to what has been claimed by plaintiff, being clearly a true complaint of opposition to the claims of plaintiff.

"Therefore, the question is reduced to determine to whom belongs the material possession of certain land adjacent to the factory above described.

"The oral evidence has shown that the Merced plantation was a property on which was a factory dedicated to the manufacture of sugar.

"That later, by virtue of some compromises, the land passed to the ownership of certain persons, and the factory to different ones.

"That around the factory there is a fenced portion of land, and, inside of it, there are a concrete tank used as sugar-drier, a derrick for lifting cane, a wind-mill for pumping water, and three houses, all belonging, together with two of the houses, to the factory, that is, to the heirs of Molinari, and the other house to intervenor Luce & Company. This land forms the site of operations of the said factory.

"That over this place, that is, on the same site of the factory, the six houses that gave rise to this suit were constructed.

"That Cividanes has two men there in charge of the factory, and Luce & Company has another person in their house above referred to.

"Luce & Company, by means of their evidence and with a view to support the material possession on which they rely, sustain that they have repaired the fences that surround said lot of land, and their cattle has grazed there since they acquired the property in the year 1920.

"Cividanes shows with his evidence that said parcel of land belongs to and forms part of the factory which he has held since he took possession as administrator and that said lot is necessary in order to carry on the operations of the sugar industry, although it is true that no grinding has been done there for some years past.

"The ocular inspection made with the consent of both parties shows that in front of the factory there is a lot of land, and on the boundary of it are the two houses occupied by the representatives of Cividanes; to the right is the house of Luce & Company, and inside of the lot embraced between the factory and the two houses

of Molinari there are the houses of the intervenors, it being true that the side of the factory is occupied in part by said constructions.

"The evidence as to the fact of possession, as may be seen, is extremely contradictory, but if the heirs of Molinari have always been in possession of the factory, a fact that has not been denied, and the land fenced around it is adjacent to and forms an integral part of the same, for it is necessary in order to perform the purposes of the industry that is being developed, it is not difficult to come to the conclusion that such land has always been in the possession of Molinari, and any act of mere tolerance on her part to the effect of allowing cattle belonging to the intervenor there would not affect her right of possession.

"Luce & Company allege, besides, their right of possession by virtue of being the owners of the land, but it is known that such a right cannot be discussed in an injunction proceeding as that established in the case at bar. Padró contra Rios, 1 S. del T. S. de P. R., 557.

"Manresa, in his Commentaries on the Civil Code, volume 4, p. 211, when referring to the persons against whom lie injunctions to retain or recover, says:

"'As a general rule, they can be brought against any person who may commit acts of disturbance or despoliation, no matter if it be the same owner, and against his heirs: although, as regards, these, Section 442 should be taken into account.'"

Upon motion of the intervenors the trial judge subsequently filed the following additional findings:

"(a) As to the land occupied by the intervenor with its buildings, we want to say that although they do not hinder totally the traffic through the place of the central, they decrease its extension greatly, and it should be taken into account that in the place there are also a concrete tank used for drying and a derrick for lifting cane.

"(b) As to the exterior condition of the factory, it is somewhat deteriorated, we not being able to determine its interior condition as we did not examine it, and besides, because it would be impossible for the court, even after having seen it, to determine the condition of the machinery, as this would require a report of experts in this matter. It has been shown that it has not been operated for the last eight or nine years.

"(c) The court finds that overseers of Cividanes, and not he himself, asked permission from those of Luce & Co. to graze Civi-

danes' cattle there, although Cividanes testified that the cattle of the intervenor grazed there by his mere tolerance, he having objected to it, communicating this to the intervenor through Mr. Oben, and furthermore, prohibiting the use of the mill for pumping water.

"(d) The court finds that the parcel on which the factory is located is bounded on three sides by land planted with sugar cane. With reference to the fence the evidence shows that it has been in that place for a long time (20 or 25 years), and that Luce & Co., Ltd., have repaired it three times during the four years that they have possessed it.

"That one of the sides has no fence, that is, the one on which is the house of Luce & Co., Ltd.

"The other facts that the court finds appear from the opinion delivered in this case, as well as the result of the ocular inspection, which could not be as extensive as desired due to the rainy weather that prevailed during the practice of the same.

"However, the ocular inspection is recorded by means of the corresponding act."

What the district judge saw upon viewing the premises is also separately set forth as follows:

"ACT OF OCULAR INSPECTION.—To-day, the 12th of May, 1924, at the petition of the plaintiff, seconded by the intervenor, the undersigned judge, together with the clerk of the court and the attorneys for both parties, went to the ward of Jobos, of the municipality of Guayama, with the purpose of making an ocular inspection of the Hacienda Merced, of which the administrator is plaintiff Manuel Cividanes.

"Upon arriving at said place we could observe a lot of land composed of about eight or nine cuerdas, separated by sugar plantations which surround it by a fence on three of its sides.

"Within that lot there is a factory or establishment to manufacture sugar, greatly deteriorated in its exterior.

"In front of said factory or establishment is found the place, and within it, a concrete tank used as a cooler for elaborating sugar, and, besides, a derrick for lifting cane.

"In front of these is a tract of land with no vegetation, due, undoubtedly to the continuous traffic over that place.

"After this is a line of houses for laborers, which belong to intervenor Luce & Co., Ltd., and are the ones that have occasioned this suit.

"At the end of these is a lane and farther two frame dwelling-

houses whose rear parts are contiguous with the fence found on the eastern side and belonging to defendant Manuel Cividanes.

"To the right, looking toward the west and facing the factory, is a house of Luce & Co., Ltd., which penetrates a little into the place, as well as two houses for laborers of Luce & Co., Ltd.

"To the left there are two other houses, for laborers also, which belong to the intervenor, being all of them the subject-matter of this suit.

"At the background of the factory there are pastures and a windmill for pumping water.

"Due to the severity of the weather, we put an end to the act, returning to Guayama the judge and the clerk, together with the attorneys of both parties, who were present during the inspection."

The assignment of errors specifies that:

"1. The District Court erred in not holding that the complaint does not state sufficient facts to set up a cause of action, and, therefore, in not dismissing the complaint.

"2. The District Court erred in ruling against the plaintiffs in intervention, their complaint having not been answered by plaintiff, and no remedy against said plaintiffs in intervention having been demanded in the original complaint.

"3. The District Court erred in not holding that, there being community property belonging to the estate of Rufina Molinari (plaintiff) and plaintiff in intervention (Luce & Co.), for the latter were the owners of the land, and the former usufructuary until her death, of the land and sole owner of the buildings, each co-owner has the right to exercise acts of possession and use of the object, so far as this does not prejudice the other co-owner, according to Section 401 of the Civil Code.

"4. The District Court erred in not holding that Luce & Co. and their predecessors in title were always in the civil and material possession of the parcel on which the buildings are located, such possession, however, being subject to the exercise by the owner of the buildings of a servitude on said parcel for all the uses and services of the old factory.

"5. The District Court erred in holding that Luce & Company, Ltd., disturbed the possession of the heirs of Rufina Molinari by constructing four houses for laborers on the land occupied by the buildings belonging to the former, as the sugar factory is not working, and said houses would not disturb the use of the factory even if it were working.

"6. The District Court erred in not applying Section 461 of the Civil Code, because the possession of the predecessors in title of Luce & Co. having been shown previous to 1916 (when Cividanes claims that his possession commenced), and the present possession of these, it must be presumed that they have possessed it during all the intermediate time.

"7. The court erred in admitting in evidence a sketch of the land and buildings in question prepared by witness Cividanes, who is not an expert in this matter.  (Page 21.)

"8. The court erred in not allowing witness Cividanes to testify on the condition of the buildings.  (Page 24.)

"9. The court erred in allowing witness Manuel Cividanes to testify in order to impugn the testimony of his own witnesses."

Appellants say that the complaint does not state facts sufficient to constitute a cause of action:

"A.—Because it alleges the possession, not of the parcel of land where the factory is found, that is, Central Merced, but of the factory itself.

"B.—Because it does not allege to have been disturbed in the possession of the factory (which is the possessed property), but of the radius or adjacent land, whose possession is not alleged.

"C.—Because such radius is not described."

[1] The complaint is not a perfect model, but the omissions complained of in so far as they exist can hardly be regarded as amounting to a complete failure to state a cause of action.  If a demurrer had been interposed and sustained, plaintiff would have had an opportunity to amend. As shown by the statement of the judge, *supra,* the question was raised for the first time in the brief below after a trial on the merits.  In the circumstances the district judge was quite right in holding that the defects referred to had been cured by the evidence.

[2] The prayer of the complaint in intervention was for a dismissal of plaintiff's action.  As pointed out by the trial judge, the intervenors assumed complete responsibility for the acts admitted by them to have been performed pursuant to their instructions by defendants and, as also noted

by the court below, the pleading seems to set forth in sub-
stance and in fact a defense to plaintiff's cause of action.
By a curious coincidence the brief on appeal is entitled
"Brief for Defendants." Counsel cite no authority in sup-
port of the second specification of the assignment of errors
and it will suffice therefore to refer in passing to *People*
v. *Pérez Irrigation District,* 132 Cal. 289, and *Henry* v.
*Vineland Irrigation District,* 140 Cal. 376, cited by appellee.

The third, fourth and fifth contentions of appellants are
discussed together and may be disposed of in like manner.
From the argument in the brief we take the following ex-
tract:

"In short, the exclusive possession of Rufina Molinari is that
which she had and her administrator now has of the factory build-
ings, etc. The possession of the adjacent land of the factory, of the
place, is not exclusive; it was the possession of all the co-owners,
of Rufina as usufructuary and of the nude owners, while she lived,
and upon her death, possession belongs to the latter with her exclu-
sion with the exception of what refers to the use of the adjacent
land for the work of the factory. This possession is nothing else
than the enjoyment of a servitude imposed by the implied will of
the parties at the division of the property of Ignacio Díaz, in con-
ferring the possession of the factory and the buildings to Rufina,
and the ownership of the lands, with no exception, to the other heirs
in nude ownership and to Rufina in usufruct. So long as Rufina
lived no legal question could arise, as she was in the possession,
use and enjoyment of all the buildings and the land. After the
death of the usufructuary, and the land having been transmitted
to third persons, the legal question has arisen, which in our judg-
ment has no other solution than that heretofore explained. Rufina's
estate, as owner of the buildings constructed on another's land, has
a right to use, of course, the land on which they are constructed;
it has a right to a servitude or right of way, so as to come in and
go out through the adjacent land; and were the factory in opera-
tion it would have a right to occupy the necessary land for the
operations of milling, while it is taking place, such as loading and
unloading of cane, movement of cars, storage of bagasse, wood, etc.,
without the owners of the land having a right to oppose those acts;
but at the same time the owners of the land, who have always owned

it through the usufructuary, at least have a right to use the adjacent land, enjoy it and own it so far as their possession does not interfere with the operations of the factory.

"Do the portable houses erected by Luce & Co., Ltd., interfere with such operations? Not at all, among other reasons for the elemental one that the factory has not been operated for a long time.

"From what has been stated it can be inferred that the District Court is not right in saying that the evidence is contradictory. It is not so. Cividanes has exercised acts of ownership on the land adjacent to the factory when milling was carried on there, utilizing the place in the labors of the mill. He exercises them now, going in and coming out with his guards and laborers of the small houses that he has there; going in and coming out of the ruinous building of the factory; and Hartmann & Co. and Luce & Co. later also exercised acts of ownership, coming in and going out of the house belonging to them that is located in the same place, grazing and watering oxen there, maintaining employees, constructing houses for laborers there, mending the fences of the contiguous cane fields which surround the land in question by three sides, etc. Both ownerships are compatible and harmonious. Cividanes has determined to disturb such harmony by trying to prohibit the owners of the land and actual possessors of it from exercising acts of ownership that are compatible with the servitude which the owner of the factory enjoys."

As already indicated, the complaint in intervention contains no prayer for affirmative relief, conceding, for the sake of argument without holding, that upon the facts alleged intervenors would have been entitled to any such relief in a proceeding of this kind.

We are therefore not concerned with the ultimate possessory rights of the respective parties.

Although the complaint in intervention speaks in general terms and without discrimination of constructive and actual possession (*posesión civil y natural*), the only thing involved, if not the only question that could be raised herein, was and is whether or not plaintiff was in actual possession of the ground upon which the houses erected by intervenors were built. If so, he is entitled to the immediate restoration of such possession regardless of any right that intervenors

may have when asserted in a proper action to eject the judicial administrator from any part or portion, or all of the said premises, or to enjoin him from interference with the exercise by intervenors of any right that they may have to participate in such possession, or to demand any other relief, whether legal or equitable.

[3, 4] Until error, if any, in the previous decisions of this court is made clearly to appear, we are constrained to hold in accordance with those decisions and in accordance with the history of the restorative interdict of the Roman Law that the spirit and the purpose of our statute is to discourage conduct calculated to provoke a breach of the peace, to give parties in possession a day in court by compelling parties out of possession to resort to the courts in order to assert their rights instead of taking the law into their own hands. It would seem to follow as a corollary to the foregoing proposition that a previous and co-existent constructive possession or mere legal or equitable right to possession is no defense to a proceeding for the restoration of the actual possession when lost as the result of violent or clandestine methods employed by a defendant. See also Vol. 6 of Manresa, Commentaries on the Spanish Code of Civil Procedure, title 20, pp. 142, 149, 152, 153, 155 and 157.

The theory of counsel for appellants as to a coexistent or alternating and intermittent actual possession by the owner of the soil is interesting and, in so far as the pasturing of cattle is concerned, more or less plausible. The chief difficulty in the application of such rule would be found to lie perhaps in the practical impossibility of any fixed line of demarcation between or definite determination of the rights of the respective parties upon any such unstable and fluctuating basis.

There is no very marked difference between the average land owner and that considerable portion of mankind which has made it proverbial that if given an inch it will "take an ell." The owner of the soil who begins by pasturing

cattle upon the mill grounds while the mill is not grinding, and later grants permission to employees of the mill owner to exercise temporarily a like privilege is prone to end by erecting upon the land so used for pasturage purposes permanent structures that will impede grinding operations whenever resumed. And if not promptly restrained the owner of the land may say therefore to the owner or administrator of the mill, you are estopped by your conduct; you can not be permitted to remain silent while I expend large sums of money in the construction of buildings upon my own land and then demand the removal or demolition of such buildings simply because they interfere, more or less, with the operation of the mill. *Rabell* v. *Rodríguez,* 24 P.R.R. 526.

Appellants concede apparently that the possession of the mill owner is exclusive while the mill is grinding and cite as a probable basis of the conclusion reached below section 447 of the Civil Code, which reads as follows:

"Sec. 447. Possession, as a fact, cannot be recognized in two different personalities, unless in cases of indivisibility. If a question arises regarding the fact of possession, preference shall be given to the present possessor; if there be two possessors, to the one longest in possession; if the dates of the possessions coincide, to the one presenting a title; and when all these conditions are equal, the thing shall be placed in deposit or judicial keeping, whilst the possession or ownership be determined through proper proceedings."

Among the rebuttable presumptions expressly established by section 102 of the Law of Evidence is the following:

"31.—That a thing once proved to exist continues as long as is usual with things of that nature."

That the possession of the ground actually occupied in connection with grinding operations is exclusive during such operation whether admitted to be so or not seems to be too obvious for argument. The same space can not be occupied at the same time by two solid objects. Cattle can

not be placed in pens already filled with live stock. Bagasse produced by a sugar mill can not be conveniently deposited upon ground already occupied by dwellings erected by the owner of the land upon which the mill stands.

Appellants do not, if we understand the argument, nor could they consistently contend that intervenors would have the right to erect permanent structures during the interval between grinding seasons upon land actually used in connection with grinding operations, but if they are at liberty to construct such buildings merely because the mill for some unexplained reason has remained idle for a year or more, then again it becomes difficult to draw a line beyond which they may not pass or to say that they may not do likewise in the interval between grinding seasons, or for that matter whenever the mill on account of a temporary shortage in cane or for any other reason may find it necessary to suspend operations for a week or ten days or even over night.

On the other hand, if the presumption as to actual occupancy of the land is to extend over such interval, then there would appear to be no very sound reason why it should not continue, in the absence of any evidence as to what is the actual or ordinary course of events in such circumstances, over a period of several years.

We need not speculate upon what the result might have been if intervenors had alleged and adduced evidence to show that the mill has no cane of its own to grind, no grinding contracts and no prospect of obtaining such contracts in the future, or that the mill could not be rehabilitated and put into running condition without practically rebuilding the same, or that it could not be profitably operated after such overhauling and repairs, or that there is no prospect or reasonable probability of a sale of the mill as such, or in short that the mill is not in fact a mill as it stands, but a junk pile.

There was some testimony tending to show that although the mill is not in running condition yet by the replacing of a number of its component parts it could be made ready for grinding. For aught that appears from the record, grinding may be resumed at the beginning of the next ensuing grinding season.

Of the propositions numbered 6 to 9, inclusive, in the assignment of errors appellants are content to say:

"Sixth, seventh, eighth and ninth assignments of error do not require special argument. We believe that it is sufficient to enumerate them only. They are a matter of evidence."

[5] Whatever merit these contentions may have is not so self-evident to us as it seems to be to appellants, and as presented and subjected in the brief they do not demand serious consideration.

The judgment appealed from must be affirmed.